# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

MELISSA J. TAYLOR,                    §
                                      §
      *Plaintiff,*            §
                                      §
*versus*                              §    CIVIL ACTION NO. 6:14-814
                                      §
CAROLYN W. COLVIN,                    §
Acting Commissioner of                §
Social Security,                      §
                                      §
      *Defendant.*            §


## REPORT AND RECOMMENDATION

Melissa J. Taylor ("Taylor") seeks review of an adverse decision on her applications for disability insurance benefits and supplemental security income available under the Social Security Act.[1] *See* 423(d)(1)(A), 1382c(a)(3).

## I.  Judicial Review

A reviewing court's limited role under 42 U.S.C. § 405(g) is to determine whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence.  *See Lamay v. Commissioner of*

---

[1]    Disability Insurance, authorized by Title II of the Social Security Act and funded by social security taxes, provides income to insured individuals forced into involuntary, premature retirement by reason of disability.  *See* 42 U.S.C. § 423(a); *see also Mathews v. Castro*, 429 U.S. 181, 186 (1976).

Supplemental Security Income, authorized by Title XVI of the Social Security Act and funded by general tax revenues, provides an additional resource to assure that disabled individuals' incomes do not fall below the poverty line. *See* Social Security Administration, Social Security Handbook, § 2100 (14th ed. 2001).  Supplemental Security Income is available to persons of all ages.

*Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009), *cert. denied*, 559 U.S. 962 (2010); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 42 U.S.C. § 405(g).

Courts cannot retry factual issues *de novo* or substitute their interpretations of administrative records for that of the Commissioner when substantial evidence supports the decision. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998). Neither can they overturn administrative rulings because they would have reached a different conclusion had the matter come before them in the first instance. *See Campbell v. Astrue*, 465 Fed. App'x 4, 5 (2d Cir. 2012) (summary order). Reviewing courts also must take "due account" of "the rule of prejudicial error." 5 U.S.C. § 706; *see also* 28 U.S.C. § 2111 (directing that judgments given upon examination of records be "without regard to errors or defects which do not affect the substantial rights of the parties"); *see also* FED. R. CIV. P. 61 (stating that "the court must disregard all errors and defects that do not affect any party's substantial rights").

## II.  Background

Taylor, born in 1976, attended regular education classes. In 2007, she completed vocational training, and became a certified nurse's assistant. (T. 186). She worked in a variety of jobs including cashier, fast food worker, home health aide, and certified nursing assistant. (T. 23, 186).

In January 2010, Taylor complained of hearing loss in her left ear dating back fifteen years. (T. 477-78, 483, 488). Subsequent treatment notes and hearing tests suggested "a left ear unilateral weakness, possibly as the result of Menier's Disease/Endolymphatic Hydrops." (T. 286). Taylor testified that a hearing aid would not benefit her hearing loss. (T. 49).

In June 2010, Taylor was noted to suffer from obesity; anxiety with depression (stable); and a chronic smoker. (T. 478, 483). Taylor, was 5'6," and weighed 301 pounds. (T. 476). She refused to undergo bariatric surgery (T. 483); hence, she was educated for weight reduction. (T. 478, 483). Taylor's anxiety on Wellbutrin (*e.g.*, anti-anxiety medication) was reported as doing "well" and "stable." (T. 478, 483). She was counseled for smoking cessation. (T. 478, 483).

On March 5, 2011, while working as a certified nurse's assistant, Taylor tripped over a wheelchair and fell, injuring her left shoulder and lower back. (T. 152, 160, 185).

Taylor applied for and received Workers' Compensation benefits. (T. 39). Her income consisted of $400 a month from Workers' Compensation benefits, $20 a week in child support, as well as Medicaid and food stamps. (*Id.*).

### III. Application for Social Security Disability Benefits

In December, 2011, at age 35, Taylor applied for disability insurance benefits and supplemental security income claiming disability due to "lower back injuries, hearing loss in left ear, high blood pressure, and anxiety," commencing March 5, 2011. (T. 185). Taylor alleged that she last worked in March, 2011, following her on-the-job lower back injury. (T. 152, 160, 185). She listed her height at 5'6," and her weight as 319 pounds. (T. 185).

In December, 2012, Taylor's weight had increased to 325 pounds. (T. 35). She was divorced, with two boys ages 15 and 9. (T. 37). She also was five and one-half months pregnant with another child. (*Id.*). She and her children lived with her parents. (*Id.*). Due to pregnancy, the only medication she was taking was over-the-counter Tylenol. (T. 40). She smoked five to six cigarettes a day. (T. 47).

## IV. Commissioner's Decision

After initial administrative denials, Taylor's application was assigned to an administrative law judge, David J. Begley ("ALJ Begley"), who conducted an evidentiary hearing. (T. 12, 30-54). Taylor, represented by Kimberly MacDougall (a non-attorney representative),[2] was present, and testified. (*Id.*). Also testifying was an impartial vocational expert, Susanna D. Roche, CRC, CDMS, CCM.[3] (T. 49-53). ALJ Begley also received into evidence forensic reports from treating sources and state agency consultants, and Taylor's medical treatment records.

ALJ Begley found that Taylor suffers from severe impairments consisting of degenerative disc disease, Menier's disease,[4] left hearing loss, and obesity. (T. 14). He declined, however, to find Taylor's depression and anxiety to be severe impairments. Although, ALJ Begley found these additional alleged impairments to be medically-determinable abnormalities, he considered them to be not severe due to lack of evidence that they affected Taylor's ability to perform basic work activities.

---

[2]     According to her website, Ms. MacDougall possesses a level of education and experience that qualifies her to "participate in the NonAttorney Demonstration Project." *See* http://northcountryadvocate.vpweb.com/About-Us.html (last visited June 5, 2015).

[3]     Susanna D. Roche holds several certifications, including: certified rehabilitation counselor; certified disability management specialist; and certified case manager. (T. 142-43).

[4]     Menier's disease, a balancing disease, typically, consists of four symptoms: Periodic episodes of rotatory vertigo or dizziness; fluctuating, progressive, low-frequency hearing loss; ringing in the ear (tinnitus); and a sensation of "fullness" or pressure in the ear.

ALJ Begley next found that none of Taylor's impairments was so severe as to be presumptively disabling.[5] Accordingly, he determined Taylor's "residual functional capacity."[6] He found that, despite severe impairments, Taylor can perform a limited range of unskilled work at the sedentary exertional level:

> [T]he claimant has the residual functional capacity to perform a range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: no climbing ladders, ropes and scaffolds, occasional climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling; avoid concentrated exposure to extreme cold, heat, and excessive noise; avoid slippery and uneven surfaces, hazardous machinery and unprotected heights; limited to occupations that do not require fine hearing capabilities.

(T. 17).

When making this determination, ALJ Begley weighed medical opinion and Taylor's subjective testimony. He partially credited forensic opinions of Taylor's treating physician, Dr. Vivienne Taylor, M.D., and treating chiropractor, Dr. David Helmer, D.C., but rejected their opinions regarding postural limitations to the extent they conflicted with the residual functional capacity finding quoted above. (T. 22-23). ALJ Begley also concluded that Taylor's subjective self-assessments concerning intensity, persistence and limiting effects of her impairment-related symptoms were "not entirely credible for the reasons explained in this decision." (T. 18).

---

[5] The Commissioner publishes a series of listed impairments describing a variety of physical and mental conditions, indexed according to the body system affected. 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). Listed impairments are presumptively disabling. *See* 20 C.F.R. § 416.920(a)(4)(iii), (d).

[6] "Residual functional capacity" refers to what persons can still do in work settings despite physical and/or mental limitations caused by their impairments and related symptoms, such as pain. *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* SSR 96-8p, TITLES II AND XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, 1996 WL 374184, at *2 (SSA July 2, 1996).

ALJ Begley found that Taylor cannot perform her past relevant work (cashier, fast food worker, home health aide, and certified nursing assistant) because it exceeds her residual functional capacity. (T. 23). However, ALJ Begley determined that Taylor can still engage in alternative, available work. (T. 24-25). He accepted VE Roche's testimony that a person with Taylor's age, education, work experience, and residual functional capacity can perform representative sedentary occupations of "document preparer," "appointment clerk" and "addresser." (T. 24-25, 51-52).

Based on VE Roche's testimony and the framework of Medical-Vocational Rule 201.28,[7] ALJ Begley concluded that a finding of "not disabled" was appropriate. (T. 25). Taylor's application was denied. (*Id.*).

The Appeals Council denied Taylor's request to review. (T. 1-6). Taylor then instituted this proceeding.

## V.  Points of Alleged Error

Taylor's proffers two alleged errors:

1.     ALJ Begley improperly evaluated the medical evidence and did not comply with 20 C.F.R. § 404.1527(b);

     a.     The ALJ should have afforded Dr. Taylor's medical opinion controlling weight pursuant to the treating physician rule; and

---

[7]     *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2.  The Medical-Vocational Guidelines are a matrix of general findings – established by rule – as to whether work exists in the national economy that a person can perform. They "take into account a claimant's residual functional capacity, as well as her age, education, and work experience." *Calabrese v. Astrue*, 358 Fed. App'x 274, 276 & n. 1 (2d Cir. 2009) (summary order) (citing *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999)). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has non-exertional limitations, the grids are used as a framework for decision-making unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or non-exertional limitations. *Stebbins v. Astrue*, No. No. 06-CV-0610-A (F), 2008 WL 4855558, at *16 (W.D.N.Y. June 19, 2008) (citing *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981)).

  b.  The ALJ improperly dismissed the treating chiropractor's opinion; and

 2.  The ALJ erroneously concluded that Ms. Taylor's anxiety was not a severe impairment.

(Dkt. No. 8, p. i). The first enumerated point challenges ALJ Begley's assessment of Taylor's *physical* limitations, specifically ALJ Begley's weighting of forensic medical opinions when determining residual functional capacity. The second complains of ALJ Begley's refusal to find that Taylor's *mental* impairments were severe.

Under sequential evaluation, severity of impairments is determined before assessing residual functional capacity.[8] An erroneous severity determination can infect findings at the remaining sequential steps.[9] Accordingly, Taylor's point of error attacking ALJ Begley's severity findings is reviewed first.

## VI. Severity Determination

Existence and severity of impairments are determined at Step 2 of sequential evaluation. "Impairments" are anatomical, physiological, or psychological abnormalities demonstrable by medically acceptable clinical and

---

[8]  The Commissioner prescribes by regulation a five-step sequential evaluation procedure which is approved by courts as a fair and just way to determine disability applications in conformity with the Social Security Act. The procedure is "sequential" in the sense that when a decision can be reached at an early step, remaining steps are not considered. *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461 (1983)). A full discussion of the Commissioner's five-step process is contained in *Christiana v. Commissioner of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

[9]  Step 2 errors may infect the administrative law judge's subsequent analytical steps and require remand. *See Scott-Flax v. Astrue*, No. 5:06cv00101, 2007 WL 2263879, at *5 (W.D. Va. 2007); *Cf. Reices-Colon v. Astrue*, 523 Fed. App'x 796, 798 (2d Cir. 2013)(finding alleged step-two error harmless because administrative law judge considered impairments during subsequent steps); *but see Kohler v. Astrue*, 546 F.3d 260, 268 (2d Cir. 2008)(stating, in context of administrative law judge's failure to properly evaluate severity of mental claimant's mental impairments, that "[i]t also is not clear whether the ALJ would have arrived at the same conclusion regarding [claimant's] [RFC] to perform work had he adhered to the regulations").

laboratory diagnostic techniques. *See* 42 U.S.C. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D); *accord* 20 C.F.R. §§ 404.1508, 416.908. "Severe" impairments significantly limit physical or mental abilities to do *basic work activities*. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). (Emphasis added.)

The claimant bears the burden of presenting evidence to establish severity. *Wilson v. Colvin*, No. 6:14–cv–00122 (MAD/TWD), 2015 WL 2371652, at *7 (N.D.N.Y. May 18, 2015). In this circuit, however, a Step 2 severity inquiry serves only to "screen out *de minimis* claims." *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). Consequently, "[a] finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' . . . [with] . . .'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, No. 97 CV 5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 154 n. 12 (1987)).

A.    *Taylor's Challenge*

Taylor underwent a consultative psychiatric examination and evaluation by Rachelle Hansen, Psy.D., whose forensic report included a statement that Taylor's symptoms were "consistent with psychiatric problems, which may significantly interfere with the claimant's ability to function on a daily basis." (T. 340). ALJ Begley "did not assign significant weight to this opinion because it [was] inconsistent with the lack of psychiatric or psychological treatment" and because there were not further treatment records pertaining to Taylor's alleged depression and anxiety. (T. 15). Taylor's brief challenges those reasons, and cites several instances within the medical record when Taylor's medical providers recorded subjective complaints of depression and anxiety. (Dkt. No. 8, pp. 23-25).

B.    *Discussion*

1.    Governing Legal Principles

When mental impairments are at issue, the Commissioner directs administrative adjudicators to employ a "psychiatric review technique" (sometimes referred to as a "special technique"). *See* 20 C.F.R. §§ 404.1520a(b)-(e), 416.920a(b)-(e); *see also Petrie v. Astrue*, 412 Fed. App'x 401, 403 (2d Cir. 2011) (summary order); *see also Kohler v. Astrue*, 546 F.3d 260, 265-66 (2d Cir. 2008) (describing analysis). This evaluative technique helps administrative law judges first determine whether claimants have medically-determinable mental impairments,[10] and whether they are severe. Administrative law judges apply commonly-called "paragraph B" criteria relating to four functional areas: (1) "[a]ctivities of daily living;" (2) "social functioning;" (3) "concentration, persistence, or pace;" and (4) "episodes of decompensation." 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). Administrative judges must provide ratings of "[n]one, mild, moderate, marked, [or] extreme" for the first three areas. *Id.*, at §§ 404.1520a(c)(4), 416.920a(c)(4). For the fourth category (episodes of decompensation), they must provide ratings on a five-point scale: "[n]one, one or two, three, four or more." *Id.*

Administrative law judges generally conclude that claimants' mental impairments are not severe when they receive ratings of "none" or "mild" in each of the first three areas and "none" in the fourth area. *Id.*, at §§ 404.1520a(d)(1), 416.920a(d)(1); *Kohler*, 546 F.3d at 266.

_____

[10]    *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1)(administrative law judge "must first evaluate [claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [claimant has] a medically determinable mental impairment"). Administrative law judges use diagnostic criteria set forth in each mental impairment Listing under paragraph A, sometime referred to as the "A" criteria.

2.    <u>Application</u>

ALJ Begley referenced and faithfully applied this psychiatric review technique.  (T. 15-16).  Based on forensic evidence from Dr. Hansen and a state agency psychologist, Dr. M. Totin, he concluded that Taylor's depression and anxiety are medically-determinable mental impairments, but that they do not rise to the level of severe impairments because the relevant evidence showed no more than mild limitations in any of the broad functional areas (paragraph B criteria).  ALJ Begley provided detailed reasons and cited evidence supporting each finding.  (T. 15-17).

Dr. Hansen's consultative observation that Taylor's psychiatric problems *may* significantly interfere with her ability to function on a daily basis was not made in the context of *reasonable medical probability*.  In any event, it is abundantly clear that Dr. Hansen concluded that Taylor possessed requisite mental capacity for basic work activities. The basic mental demands of competitive work include the ability to understand, carry out, and remember simple instructions; respond appropriately to supervision, co-workers, and usual work situations; and deal with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 404.1545(c), 416.921(b), 416.945(c).  Dr. Hansen opined that Taylor is cognitively able to follow and understand simple directions and instructions; can perform simple tasks independently; can maintain attention and concentration; is able to maintain a regular schedule; is cognitively able to learn new tasks; can cognitively perform complex tasks independently; is able

to make appropriate decisions; is able to relate adequately with others.[11] (T. 340).

Dr. M. Totin considered all of the mental health evidence of record, including Dr. Hansen's report, in assessing Taylor's mental functioning. (T. 15-16). Dr. Totin observed that Taylor never received specialized treatment for psychiatric concerns, and was only prescribed Buspar by her primary care physician. (T. 332). Dr. Totin further noted that the only actual functional limitation assessed by Dr. Hansen was "difficulty dealing with stress." (T. 332). Dr. Totin assessed medically-determinable depressive and anxiety disorders that caused Taylor no greater than mild restrictions in her activities of daily living, no difficulties in her ability to maintain social functioning, and no greater than mild difficulties in maintaining concentration, persistence, or pace. (T. 323, 325, 330). Dr. Totin also found no evidence of any episodes of decompensation of extended duration. (T. 330). Dr. Totin concluded that "[i]mpairment at this time is rated as non-severe." (T. 332).

Under these circumstances, ALJ Begley's Step 2 finding regarding Taylor's anxiety and depression is supported by substantial evidence. ALJ Begley did not ignore Taylor's subjective complaints of anxiety and depression. He acknowledged that she complained of anxiety to her primary care physician, and that she was prescribed anxiety medication (Busipirone) before her pregnancy.

---

[11]    Dr. Hansen examined Taylor on April 9, 2012. (T. 15, 337-41). She found Taylor cooperative and responsive; her speech was fluid and clear; she had a grasp of expressive and receptive language; and her thought processes were coherent and goal directed without evidence of hallucinations, delusions, or paranoia. (T. 338-39). While her affect was anxious and depressed and her mood dysthymic, Dr. Hansen observed that her sensorium was clear; she was fully oriented; and her attention, concentration, and memory skills were all intact. (T. 339). She estimated that Taylor's intellectual functioning was in the average range and her insight and judgment were fair and good. (T. 339). Based on her mental status examination, Dr. Hansen assessed panic disorder without agoraphobia, and depressive disorder, not otherwise specified. (T. 340).

(T. 14). He further mentioned that Taylor testified that the Buspirone effectively prevented her anxiety attacks. (*Id.*).

Importantly, however, none of Taylor's primary care providers opined that Taylor's anxiety and depression significantly limited her mental ability to perform basic work activities. Nor did Taylor provide subjective evidence specifically addressing her inability to meet basic mental demands of work. Absence of medical or subjective evidence addressing this issue means that she failed to meet her Step 2 burden in any event.

Taylor's proffered error regarding ALJ Begley's Step 2 severity determination regarding anxiety and depression does not warrant reversal of the Commissioner's decision.

## VII. Residual Functional Capacity

Taylor's remaining point argues that ALJ Begley's assessment of her physical residual functional capacity is infirm because he erroneously failed to give controlling weight to the forensic opinion of Taylor's treating physician, Vivienne Taylor, M.D. (hereafter "Dr. V. Taylor" for clarity). Taylor similarly complains of ALJ Begley's decision to give only "limited weight" to the opinion of a treating chiropractor, David Helmer, D.C. Both of these primary care providers opined that Taylor has a greater degree of physical impairment than recognized by ALJ Begley in his residual functional capacity assessment.

*A.    Forensic Medical Opinions*

Taylor's point must be addressed in context. Thus, it is appropriate at the outset to summarize the relevant evidence from Dr. V. Taylor and Dr. Helmer:

1. <u>Dr. V. Taylor</u>

   *Dr. Vivienne Taylor, M.D., treating physician*

Taylor received care for her back injury at Boonville Family Care clinic starting in March 2011. (T. 470-71). During the next eleven months, she was examined and treated by a nurse practitioner, a physical therapist, two chiropractors, two primary care physicians and one orthopedic surgeon. Her primary care was assumed by Dr. V. Taylor, who specializes in internal medicine and pediatrics, in February, 2012.

In a medical source statement (physical) dated December 31, 2012, Dr. Taylor opined that Taylor's functional ability to do work-related activities was as follows:

- lift and carry occasionally 5 pounds or less;
- lift and carry frequently 5 pounds or less;
- stand and/or walk less than 4 hours of an 8-hour workday;
- sit in an upright position less than 6 hours of an 8-hour workday;
- occasionally balance or kneel, but never climb, crouch, crawl, and stoop;
- occasionally reach overhead and frequently handle, finger, and feel;
- limited hearing; and
- sensitivity to extreme temperatures, noise, dust, humidity/wetness, hazards (machinery, heights).

(T. 379-80). During subsequent follow-up Workers' Compensation examinations, Dr. Taylor further opined that Taylor is "totally disabled" and "100 percent disabled" due to her back pain. (T. 371, 373).

## 2.   Dr. Helmer

Dr. Helmer, began treating Taylor in July 2011.  (T. 368).  In a medical source statement (physical) dated September 19, 2012, Dr. Helmer opined that Taylor's functional ability to do work-related activities was as follows:

– lift and carry occasionally 10 pounds or less;

– lift and carry frequently 5 pounds or less;

– stand and/or walk less than 4 hours of an 8-hour workday;

– sit in an upright position less than 6 hours of an 8-hour workday;

– occasionally kneel, crouch, and crawl, but never climb, balance, and stoop;

– occasionally reach overhead and handle items;

– frequently finger and feel;

– unlimited hearing; and

– sensitivity to extreme temperatures, vibration, humidity/wetness, and hazards (machinery, heights).

(T. 367-68).

While there are minor differences between the functional assessments of Dr. V. Taylor and Dr. Helmer, each agreed that Taylor has postural limitations that preclude her from performing a full range of sedentary work.  Both opined that Taylor cannot sit for as long as six hours in an eight-hour workday as sedentary work generally requires.[12]

---

[12]     "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

20 C.F.R. §§ 404.1567(a), 416.967(a).

B.    *ALJ Begley's Credibility Choices*

ALJ Begley assigned "some weight" to exertional[13] limitations opined by Dr. V. Taylor, but stated that "I do not find that the [nonexertional] postural limitations are supported by the medical evidence."[14] (T. 23).  With respect to this latter finding, ALJ Begley stated that Dr. V. Taylor's progress notes indicated that Taylor's condition stabilized with conservative treatment, and that the claimant, Melissa Taylor, reported that she performs activities of daily living at a "high level."  (*Id.*).  ALJ Begley further noted that "there is no indication that Dr. Taylor prescribed the claimant highly potent narcotics medication or referred the claimant for an invasive surgical procedure for the claimant's alleged back pain, which suggests that the claimant's back pain was not as severe."  (T. 21).

As for Dr. Helmer, ALJ Begley noted that chiropractors are not "acceptable medical sources."  (T. 22).  Nonetheless, he assigned "limited weight" to Dr. Helmer's opinion, apparently crediting only Dr. Helmer's progress notes which ALJ Begley viewed as indicating that Taylor responded well to conservative chiropractic treatment, and that her condition remained stable.  (T. 22).

---

[13]    "Exertional limitations" are "limitations and restrictions imposed by [a claimant's] impairment(s) and related symptoms, such as pain, affect only [his] ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)." 20 C.F.R. §§ 404.1569a(b), 416.969a(b).

[14]    "Nonexertional limitations" are those that "affect only [the claimant's] ability to meet the demands of jobs other than the strength demands." *See* 20 C.F.R. §§ 404.1569a(c), 416.969a(c).

*C.*    *Governing Legal Standards*

The Commissioner categorizes medical opinion evidence by "sources" described as "treating,"[15] "acceptable"[16] and "other."[17]  Evidence from all three sources can be considered when determining severity of impairments and how they affect individuals' ability to function.  *See* SSR 06–03p, 2006 WL 2329939, at *2.

A "treating physician rule" requires, moreover, that administrative law judges defer and give controlling weight to opinions of treating sources regarding the nature and severity of impairments when they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record."[18]  The Commissioner expresses the reason for this rule in her regulation:

> [T]reating sources . . . are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

---

[15]    *See* 20 C.F.R. §§ 404.1502, 416.902 ("Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.").

[16]    "Acceptable" medical sources are licensed  physicians (medical or osteopathic doctors), psychologists, optometrists, podiatrists, and speech-language pathologists.  20 C.F.R. §§ 404.1513(a), 416.913(a).

[17]    "Other" sources are ancillary providers such as nurse practitioners, physician assistants, licensed clinical social workers, and therapists.  20 C.F.R. §§ 404.1513(d), 416.913(d).

[18]    20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also* SSR 96-2p, 1996 WL 374188, at *1-2; *see also Morgan v. Colvin*, No. 14-991-cv, 592 Fed. App'x 49, 50 (2d Cir. 2015) (summary order); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

The Commissioner, however, need not grant "controlling weight" to a treating physician's opinion as to the ultimate issue of disability, as this decision lies exclusively with the Commissioner. *See* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("treating physician's statement that the claimant is disabled cannot itself be determinative"). Moreover, when treating sources' opinions swim upstream, contradicting other substantial evidence (such as opinions of other medical experts), or for any good reason, administrative law judges can decline to afford them controlling weight.[19] When controlling weight is not afforded, or when other medical-source opinions are evaluated, administrative judges must apply certain regulatory factors to determine how much weight, if any, to give such opinions: (1) length of treatment relationship and the frequency of examination; (2) nature and extent of treatment relationship; (3) evidence that supports a treating physician's report; (4) how consistent a treating physician's opinion is with the record as a whole; (5) specialization of a physician in contrast to condition being treated; and (6) any other significant factors. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

Evidence from "other sources" is "important and should be evaluated on key issues such as impairment severity and functional effects." *See* SSR 06–03p, TITLES II AND XVI: CONSIDERING OPINIONS AND OTHER EVIDENCE FROM SOURCES WHO ARE NOT "ACCEPTABLE MEDICAL SOURCES" IN DISABILITY CLAIMS, 2006 WL 2329939, at *2-3 (SSA Aug. 9, 2006). "Other" source opinions, even when based on treatment and special knowledge of an individual, never enjoy controlling weight presumptions. *Id.*; *see also* SSR 96–2p, TITLES II AND XVI: GIVING

---

[19]    *See Williams v. Commissioner of Soc. Sec.*, 236 Fed. App'x 641, 643-44 (2d Cir. 2007)(summary order); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

CONTROLLING WEIGHT TO TREATING SOURCE MEDICAL OPINIONS, 1996 WL 374188, at *1 (SSA July 2, 1996) (explaining controlling-weight factors).

Finally, "it is well-settled that the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion." *See Balsamo v. Chater*, 142 F.3d 75, 80–81 (2d Cir. 1998) (internal citations omitted); *accord Shaw v. Chater*, 221 F.3d 126, 134-35 (2d Cir. 2000) ("[neither the trial judge nor the ALJ is permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion."). Indeed, decisions based on improper medical findings or diagnoses made by a lay administrative law judge are not supported by substantial evidence. *See Gonzalez ex rel. C.C. v. Astrue*, Civil Action No. 1:07–cv–487 (GLS/VEB), 2009 WL 4724716, at *4-5 (N.D.N.Y. Dec. 2, 2009).[20] While administrative law judges are entitled to resolve conflicts in the record, they cannot pick and choose only evidence that supports a particular conclusion. *See Smith v. Bowen*, 687 F. Supp. 902, 904 (S.D.N.Y. 1988) (citing *Fiorello v. Heckler*, 725 F.2d 174, 175-76 (2d Cir. 1983)); *see also Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011); *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability.").

---

[20]    In *Gonzalez*, the Court thoroughly reviews this issue:

...the ALJ may not make his own diagnosis based upon the signs, symptoms, and laboratory findings of record. *Goldthrite v. Astrue*, 535 F. Supp.2d 329, 339 (W.D.N.Y. 2008) ("An ALJ must rely on the medical findings contained within the record and cannot make his own diagnosis without substantial medical evidence to support his opinion."); *see* 20 C.F.R. § 416.927(a)(2) (explaining that diagnoses are medical opinions from physicians or psychologists). Indeed, the Second Circuit has repeatedly warned ALJs from "improperly set[ting] [their] own expertise against that of the treating physician." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998)).

*See Gonzalez ex rel. C.C. v. Astrue*, Civil Action No. 1:07–cv–487 (GLS/VEB), 2009 WL 4724716, *3 (N.D.N.Y. Dec. 2, 2009).

D.    *Taylor's Challenges*

Taylor first argues that ALJ Begley did not engage in the six-factor analysis prescribed by regulation, and advocates that had he done so, he would have been required to give controlling weight to Dr. V. Taylor's opinions. She further argues that ALJ Begley, without a conflicting medical opinion, improperly substituted his own opinion of Taylor's limitations for that of her treating physician, Dr. V. Taylor. (Dkt. No. 8, p. 20). Taylor further argues that ALJ Begley improperly relied on the fact that Dr. V. Taylor did not prescribe highly potent narcotics to treat Taylor's pain nor did she recommend invasive surgery. (*Id*.). Finally, Taylor maintains that ALJ Begley mischaracterized her physical activities of daily living as being at a "high level." of." (*Id.*, p. 21).

Taylor similarly maintains that ALJ Begley erred by not applying the prescribed regulatory factors when affording only limited weight to Dr. Helmer's opinion.    (Dkt. No. 8, pp. 21-23).    Taylor argues that ALJ Begley mischaracterized Dr. Helmer's progress notes as indicating that her condition was stable, and she maintains that ALJ Begley cherry-picked through Dr. Helmer's records, citing only those items which tended to support his own conclusion, while ignoring items to the contrary. (*Id.*).

E.    *Application*

Although ALJ Begley provided a boilerplate statement that he "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927," one is hard-pressed to discern any six-factor analysis by ALJ Begley to determine how much weight to afford medical opinions from Dr. V. Taylor and Dr. Helmer. Courts conducting judicial review in social security cases, however, do not require perfect opinions or rigid, mechanical, formulaic applications of this test. *See Atwater v. Astrue*, 512 Fed. App'x 67, 70 (2d Cir. 2013) (summary order) ("no such slavish recitation of each and every factor [20 C.F.R.

§§ 404.1527(c), 416.927(c)] [is required] where the ALJ's reasoning and adherence to the regulation are clear"); *see also Halloran v. Barnhart*, 362 F.3d 28, 31–32 (2d Cir. 2004) (affirming ALJ opinion which did "not expressly acknowledge the treating physician rule," but where "the substance of the treating physician rule was not traversed"). In some instances, for example, an evidentiary record may be silent with respect to a prescribed analytical factor, such that addressing that factor would be superfluous. In sum, reviewing courts are more concerned with whether an administrative decision reflects that the entire record was considered, whether substance of a prescribed analytical protocol was traversed, whether the reasons underlying findings are expressed clearly enough for meaningful judicial review, and whether determinations are supported by substantial evidence. *See, e.g., Cichocki v. Astrue*, 729 F.3d 172, 177–78 (2d Cir. 2013) (declining to adopt a *per se* rule that failure to provide a prescribed function-by-function analysis of residual functional capacity is grounds for remand).[21]

A reviewing court cannot reasonably infer, therefore, that ALJ Begley's mere failure to explicitly apply the applicable 6-factors *seriatim* equates to a violation or ignorance of governing law. Rather, the court must cipher his decision in the whole to determine whether it reflects analytical and substantive equivalence. In that respect, a reviewing court cannot independently apply the prescribed 6-factor analysis and make a *de novo* determination of weight due to opinions of Dr. Taylor and other medical sources. It can only determine whether

---

[21]     *See also, Judelsohn v. Astrue*, No. 11-CV-388S, 2012 WL 2401587, at *6 (W.D.N.Y. June 25, 2012) and *Oliphant v. Astrue*, No. 11-CV-2431, 2012 WL 3541820, at *22 (E.D.N.Y. Aug. 14, 2012) (both declining to view a 7-factor analysis prescribed by regulation for assessing subjective credibility as a rigid prerequisite). The gist of these cases is that reviewing courts are more concerned with whether an administrative decision reflects that the entire record was considered, whether the substance of a prescribed analytical protocol was not traversed, and whether the determination is supported by substantial evidence. (*Id.*).

ALJ Begley's articulated reasons traversed the substance of governing legal principles and whether those reasons are supported by substantial evidence.

After careful review, the undersigned concludes that ALJ Begley's articulation of Taylor's residual functional capacity is not susceptible to meaningful judicial review, and it traverses the substance of governing legal principles. First, ALJ Begley provided no plausible reason for *crediting* Dr. V. Taylor's opinions regarding *exertional* limitations while *rejecting* her opinions regarding nonexertional (*postural*) limitations. He stated that he rejected Dr. V. Taylor's opinion regarding postural limitations because it conflicted with other medical evidence, but he did not identify any medical evidence *conflicting* with Dr. V. Taylor's assessment of *postural* limitations, nor, on the flip side, did he describe any medical evidence *supporting* Dr. V. Taylor's opined *exertional* limitations. A reviewing court is left to speculate as to why ALJ Begley thought some of Dr. V. Taylor's opinions were credible or why others were not.

Second, and perhaps more importantly, ALJ Begley substituted his own lay assessment of Taylor's limitations for that of professional medical sources. Uncontroverted professional medical opinion from a treating physician and treating chiropractor established that Taylor's physical impairments do not allow her to sit for as long as six hours in an eight-hour work day (as is typically required by sedentary work). By not including a less-than-six-hour-sitting limitation, or a sit-stand option in Taylor's residual functional capacity assessment, ALJ Begley effectively rejected these professional medical opinions, and substituted his own lay opinion. This was a clear error, notwithstanding the highly-deferential standard of judicial review.

A reviewing court cannot declare this error harmless. It cannot take judicial notice that representative jobs identified by the vocational expert as alternative work that Taylor can perform could be performed by a person whose

residual functional capacity limits her to sitting less than six hours, or by a person needing a sit-stand option. It cannot, therefore, confidently conclude that Taylor's application would have been decided the same way absent the above error.

Taylor's brief to the court also identifies "cherry-picking"[22] and mischaracterization-of-evidence errors.[23] Because this action must be remanded based on the errors described above, the court need not determine whether these additional errors, standing alone, warrant reversal.

## VIII.  Recommendation

The Commissioner's decision should be REVERSED and the case REMANDED pursuant to 42 U.S.C. § 405(g), sentence four, for further proceedings.

## IX.  Objections

Parties have fourteen (14) days to file specific, written objections to the Report and Recommendation. Such objections shall be filed with the Clerk of the Court.

---

[22]    ALJ Begley noted "a significant gap in chiropractic treatment until March 6, 2012, which suggests that the claimant's alleged back pain has stabilized over time." (T. 20). He failed to acknowledge, however, that Taylor's visits were subject to approval by Workers' Compensation (T. 373, 375-77), and that Taylor explained that Workers' Compensation "usually approves [chiropractic treatment] every four or five months for six to 12 sessions." (T. 40).

[23]    ALJ Begley stated that Taylor "responded well to conservative chiropractic treatment and [that] her condition remained stable." (T. 22). Dr. Helmer began treating Taylor in July, 2011, and continued treatment through September 2012. He frequently observed that Taylor was experiencing "moderate tender taut fibers over the patient's left quadratous lumborum, right quadratous lumborum, left buttocks and right buttocks," and that testing consistently revealed limitations in her lumbosacral region. (T. 254, 256, 258-71, 355-56, 358-65). While Taylor reported feeling "slightly better" directly after chiropractic appointments, Dr. Helmer's notes indicate that her pain was worse when not receiving treatments. (T. 355, 362). When there was a Workers' Compensation-imposed gap in treatment, Taylor's pain worsened. (T. 355, 362). The pattern of feeling slightly better while being treated, then losing approval for treatment from Workers' Compensation, only to come back again for treatment feeling worse does not depict a stable condition.

**FAILURE TO OBJECT TO THE REPORT, OR TO REQUEST
AN EXTENSION OF TIME TO FILE OBJECTIONS, WITHIN
FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Graham v. City of New York*, 443 Fed. App'x 657, 658 (2d Cir. 2011) (summary order); *FDIC v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995); *see also* 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Signed on the ___29___ day of _____June_____ 2015.

Earl S. Hines
United States Magistrate Judge